UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BEMCY, LLP,** a Pennsylvania limited liability partnership, : : Plaintiff, : : v. : : **GILEAD SCIENCES, INC., and INITIATIVE MEDIA, LLC** : : Defendants. : | **CIVIL ACTION NO.:** |

## COMPLAINT

Plaintiff, BEMCY, LLP ("BEMCY"), by its attorney, Arnold C. Joseph, Esq., for its Complaint against Defendants, Gilead Sciences, Inc. ("Gilead") and Initiative Media, LLC, ("Initiative") states as follows:

## PARTIES

1. BEMCY is a Pennsylvania limited liability partnership. BEMCY's principal place of business is in Philadelphia, Pennsylvania.

2. Gilead is a California corporation with its principal place of business in Foster City, California.

3. Initiative is a Delaware limited liability company with its principal place of business at 100 West 33rd Street, 4th Floor, New York, NY 10001.

## JURISDICTION

4. This Court has original jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332(a)(1) because it is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

## VENUE

1

5. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391 (a) (2) because it is a judicial district in which a substantial part of the events and omissions giving rise to Plaintiff's claim occurred.

## FACTS COMMON TO ALL COUNTS AND DEFENDANTS

6. At all times relevant hereto BEMCY was a producer of educational motion pictures, television programs and docuseries focused on healthcare and life science.

7. Upon information and belief, at all times relevant hereto Gilead was a pharmaceutical corporation in the business of developing medicines for life-threatening illnesses.

8. Upon information and belief, at all times relevant hereto Initiative was a communications agency with its principal place of business located 100 West 33rd Street, 4th floor, New York, New York 10001.

9. In September of 2020 BEMCY and Gilead began negotiations which culminated in an agreement in principle whereby Gilead agreed to become the primary title sponsor of an eight-hour long episode documentary series with the working title of "40 Years of HIV", which would be produced by BEMCY ("the Program").

5. By January of 2021, BEMCY and Gilead had fully negotiated the material terms of their agreement with respect to the Program.

6. Upon information and belief, in or about January of 2021, Gilead retained the services of Initiative to act as its agent with respect to the promulgation and execution of the agreement which BEMCY ultimately entered with Gilead in relation to the Program.

7. On or about April 8, 2021, BEMCY and Gilead (through its agent Initiative) entered into a written "Program Title Sponsorship Agreement" ("the Agreement").  *A copy of the Agreement is attached hereto as Exhibit A.*

8. The following language of the Agreement's preamble, Gilead was listed as the principal on whose behalf Initiative was acting, and was identified as the "Company", and BEMCY was identified as the "Producer":

> This Program Sponsorship Agreement (the "Agreement") is entered into as of the last date of signature hereunder (the "Effective Date") by and between Initiative Media LLC ("Agency") as agent on behalf of its client Gilead Sciences, Inc. ("Company") and BEMCY ("Producer"). This Agreement includes this Cover Sheet, the Standard Terms and Conditions attached hereto, and the attached Schedule(s).

9. The Agreement delineated the specific responsibilities with respect to the production of the Program and the grant of certain sponsorship rights to Gilead in the following language of Paragraph 1.1:

> 1. Sponsorship Benefits; Distribution; Exclusivity.
>    1.1. <u>Overview</u>. In connection with the Program, Producer shall provide Company with the "title level" sponsorship benefits set forth on Schedule A ("Sponsorship Benefit(s)"). Producer covenants that (a) such "title level" of sponsorship shall be the highest level of sponsorship that Producer offers or provides in connection with the Program and (b) Producer shall not, directly or indirectly, offer or provide to any third party in connection with or related to the Program any sponsorship benefits that, in the aggregate, are more favorable to such third party than the Sponsorship Benefits are to Company may use and exploit the Sponsorship Benefits in any and all media, whether now known or hereafter developed, for any purpose contemplated by this Agreement, including, without limitation, for the purposes of advertising and promoting itself, the Program and its sponsorship thereof, and its products and services.

10. Paragraph 1.3 of the Agreement provided, in pertinent part, as follows with respect to exclusivity:

> 1.3. Exclusivity. Producer shall not, in connection with the Program, enter into (or cause or permit any third party to enter into) any advertising, marketing, sponsorship, promotion, endorsement, preferred rate, affiliation, product or service integration or placement, or other similar agreement, whether written or oral, directly or indirectly, for any of the following (or with any third party that offers any of the following): any alternative HIV treatments ("Competitive Products "). Without limiting the foregoing, no Competitive Product shall be featured or mentioned by name in the Program or in any advertising or promotion aired during, for or in connection with the Program. For the avoidance of doubt, the foregoing restriction shall prohibit Producer, WGN, any multichannel-video programming distributor, any OTT distributor, any other programming service airing or distributing the Program or any third party from selling or displaying, directly or indirectly, any advertising or promotion for any Competitive Product against, during, around or in connection with the Program.

11. Paragraph 2 of the Agreement provided as follows with respect to the payment of the Sponsorship Fee by Gilead to BEMCY:

> 2. <u>Sponsorship Fees</u>. The Agency on behalf of Company will pay **in full to Producer** the fees set forth on Schedule B ("Sponsorship Fees"). **Producer shall invoice the Agency for such Sponsorship Fees in accordance with the schedule set forth on Schedule B and Agency, on behalf of the Company, shall pay the amounts set forth in such invoice(s) within sixty (60) days of receipt via wire transfer according to instructions provided to Agency by Producer**. Producer acknowledges, agrees, and understands that the concept of sequential liability shall apply, whereby Agency shall not be liable Producer on any invoice unless funds in the full amount of such invoice theretofore have cleared from Company to Agency. Until such time when funds in the full amount of an invoice have cleared from Company to Agency, Company shall remain solely and fully liable to Producer for the payment of such invoice
> [Emphasis added]

12. Schedule "B" of the Agreement provided as follows with respect to the payment of the Sponsorship Fee:

Sponsorship Fee
Sponsorship Fee Total: $2,000,000

BEMCY shall invoice Two Million Dollars ($2,000,000 USD) upon the full execution of this Agreement. Agency on behalf of Company shall pay BEMCY within _60 days of receipt of invoice via wiring instructions provided with the invoice.

13. The vast majority of the Sponsorship Fee was intended to fund the Program. Consequently, Gilead agreed to remit payment of the Sponsorship Fee to BEMCY early in the process so that BEMCY would have the critically needed resources to produce the Program, the first episode of which was scheduled to air in July of 2021.

14. Immediately upon the execution of the Agreement BEMCY, in reliance on the promises and assurances made by Gilead in the Agreement, and on Paragraph 2 and Schedule B of the Agreement, which required Gilead to remit payment to BEMCY within 60 days of the receipt by Gilead of BEMCY's invoice, BEMCY began undertaking those tasks necessary to produce the Program.

15. In reliance on the promises and assurances made by Gilead in the Agreement, BEMCY incurred substantial costs in connection with its efforts to produce the Program.

16. In reliance on the promises and assurances made by Gilead in the Agreement, and pursuant to the restrictions placed upon it by Gilead through paragraph 1.3 of the Agreement, BEMCY, to its detriment, did not seek or solicit sponsorship funds from any other entity for the Project although BEMCY was aware of other entities who were ready, willing, and able to sponsor the Program.

17. On April 30, 2021, pursuant to paragraph BEMCY invoiced Gilead for the full amount of the $2 million sponsorship fee.

18. Consequently, Gilead was contractually obligated to remit the full Sponsorship Fee to BEMCY by no later than June 29, 2021, pursuant to paragraph 2 of the Agreement.

19. Upon information and belief Gilead did in fact transfer the Sponsorship Fee to Initiative following BEMCY's submission of the invoice, however Initiative failed to remit the Sponsorship Fee to BEMCY and although Gilead was aware of Initiative's failure to remit the Fee, Gilead took no steps to cause the Sponsorship Fee to be remitted to BEMCY in accordance with the Agreement.

20. Between May and June of 2021 Gilead and Initiative repeatedly represented to BEMCY, that full payment of the Sponsorship Fee would be remitted to BEMCY within the 60-day period under the Agreement, however upon information and belief, Gilead and Initiative made these representations to BEMCY knowing that they were false or, alternatively, with reckless disregard for their truth.

21. BEMCY relied on the foregoing representations and continued to take steps to produce the Program and forewent opportunities to seek alternative sponsorship for the Program.

22. In or around May of 2021, Gilead and Initiative began trying to re-negotiate the payment terms under the Agreement.

23. Although BEMCY was reasonable in trying to accommodate Gilead and Initiative's efforts to re-write the Agreement, Gilead insisted on smaller payments spread out over a long period of time.  This was unacceptable to BEMCY because, as noted above, most of the Sponsorship Fee was critically needed up front to fund the Program and BEMCY had begun to expend its own funds to begin the Project in anticipation of receipt of the Sponsorship Fee.

24. To date, Gilead has failed to pay any of the sponsorship fee.

25. Instead, on August 2, 2021 – after expressing another desire to renegotiate the Agreement and after having received an offer from BEMCY containing a more generous payment proposal – Gilead purported to terminate the Agreement without cause.

26. BEMCY fully and properly performed all obligations owed Gilead and Initiative and performed all conditions precedent to filing this lawsuit.

27. Gilead breached the Agreement by failing to pay the required sponsorship fee. Gilead also breached the Agreement by purporting to terminate it in bad faith.

28. Gilead's breach of the Agreement and other misconduct described above have caused damages to BEMCY in excess of $2 million, including the lost sponsorship fee, lost opportunity costs, lost profits from the Program, and attorney fees.

29. Upon information and belief between April and July of 2021 Initiative, with full knowledge of the existence of the Agreement and the obligations of Gilead thereunder, took affirmative steps to harm the contractual relationship between Gilead and BECMY by refusing to release the Sponsorship Fee to BEMCY after it received it and by convincing Gilead to withhold payment of the Sponsorship Fee and to improperly terminate the Agreement after Gilead's breach

30. Initiative's aforementioned actions were outside of the scope of its employment and were against the interests of Gilead.

31. As a direct consequence of Gilead's breach and Initiative's tortious interference with BEMCY and Gilead's contractual relationship BEMCY was forced to cancel the Program.

## COUNT I

### BREACH OF CONTRACT
### (BEMCY v GILEAD)

32. BEMCY incorporates by reference and re-alleges paragraphs 1 through 31 as though fully set forth herein.

33. The Agreement constitutes a valid and enforceable contract between BEMCY and Gilead.

34. One of the essential terms of the Agreement was Gilead's agreement to remit payment in the amount of Two Million Dollars ($2,000,000.00) to BEMCY within 60 days of the date on which BEMCY presented Gilead with an invoice for that amount.

35. BEMCY fully and properly performed all obligations owed to Gilead, including, but not limited to the presentation of the aforementioned invoice.

36. Gilead breached the Agreement by, among other things, failing to pay the Sponsorship Fee as required by the Agreement and terminating the Agreement in bad faith.

37. Gilead's breaches of the Agreement have damaged BEMCY in amounts that exceed $2,000,000, plus interest, attorney fees and costs as allowed under the Agreement and applicable law.

**WHEREFORE**, BEMCY respectfully requests that this Court enter judgment in its favor and against Gilead in the amount to which it is found to be entitled, plus interest, costs, and attorney fees as allowed by applicable law.

### COUNT II
### FRAUD
### (BEMCY v GILEAD)

38. BEMCY incorporates by reference and re-alleges paragraphs 1 through 37 as though fully set forth herein.

39. Upon information and belief, at some time after entering the Agreement Gilead decided not to honor its obligations under the Agreement. This can be inferred by Gilead's actions after signing the Agreement, including its repeated false representations that it was going to pay the full Sponsorship Fee.

40. Gilead knew that its representations were false when it made them or, alternatively, made them with reckless disregard for their truth.

41. BEMCY reasonably relied on Gilead's representations.

42. The fraud that Gilead perpetrated on BEMCY was willful and malicious and caused severe damages to BEMCY.

**WHEREFORE**, BEMCY respectfully requests that this Court enter judgment in its favor and against Gilead in the amount to which it is found to be entitled, plus punitive damages, interest, costs, and attorney fees as allowed by applicable law.

### COUNT III
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (BEMCY v INITIATIVE)

43.     BEMCY incorporates by reference and re-alleges paragraphs 1 through 42 as though fully set forth herein.

44.     At all times relevant hereto Initiative was aware of the existence of the contractual relationship between BEMCY and Gilead with respect to the Program.

45.     Upon information and belief, after the Agreement was executed, Initiative took purposeful actions specifically intended to harm the contractual relationship between BEMCY and Gilead by, among other things, causing Gilead not to pay the Sponsorship Fee in accordance with the terms of the Agreement, and causing Gilead to improperly terminate the Agreement.

46.     The aforementioned actions of Initiative were neither privileged nor justified insofar as Initiative's aforementioned actions were outside of the scope of its employment and were against the interests of Gilead.

47.     BEMCY was harmed by Initiative's interference insofar as BEMCY did not receive the Sponsorship Fee, the benefits that were contemplated by its Agreement with Gilead, and forewent opportunities to secure sponsorship money from other entities.

**WHEREFORE**, BEMCY respectfully requests that this Court enter judgment in its favor and against Gilead in the amount to which it is found to be entitled, plus punitive damages, interest, costs, and attorney fees as allowed by applicable law.

Respectfully submitted,

Dated:  August 21, 2021                              By: *Arnold Joseph*
                                                                         Arnold C. Joseph, Esquire
                                                                         Joseph & Associates
                                                                         1801 Market Street
                                                                         Suite 2500
                                                                         Philadelphia, Pa., 19103
                                                                         Attorney for Plaintiff

## **JURY DEMAND**

      BEMCY hereby demands a jury on all facts and issues so triable.




                                                                       Respectfully submitted,

Dated:  August 21, 2021                              By: *Arnold Joseph*
                                                                         Arnold C. Joseph, Esquire
                                                                         Joseph & Associates
                                                                         1801 Market Street
                                                                         Suite 2500
                                                                         Philadelphia, Pa., 19103
                                                                         Attorney for Plaintiff